UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LAURA MATTHIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: |
| | ) |
| THE TRUSTEES OF PURDUE | ) |
| UNIVERSITY a/k/a PURDUE | ) |
| UNIVERSITY NORTHWEST, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Laura Matthies ("Matthies"), brings this action against Defendant, The Trustees of Purdue University a/k/a Purdue University Northwest ("Defendant"), for unlawfully violating her rights as protected by Title VII of the Civil Rights Act of 1964 ("Title VII").

## PARTIES

2. Matthies has resided within the Northern District of Indiana at all relevant times.

3. Defendant is a public educational institution operating within the Northern District of Indiana.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; and 42 U.S.C. § 2000e-5(f)(3).

5. Matthies was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7. Matthies satisfied her obligations to exhaust her administrative remedies, having timely

filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue notice to Matthies. She now timely files her lawsuit.

8. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

9. Matthies is female.

10. Defendant hired Matthies in or about April 2003.

11. Matthies was an Administrative Assistant in the Communication and Creative Arts ("CCA") Department when Defendant fired her on or about May 13, 2022.

12. Matthies' work performance met or exceeded Defendant's legitimate expectations at all relevant times. For instance, on or about April 27, 2022, Nemeth presented a card to Matthies that stated, in relevant part: "Thank you for all you do!" He also presented a bag to her with a tag that stated, in relevant part: "You are loved."

13. Matthies reported to Interim Department Chair Neil Nemeth ("Nemeth") from in or about September 2020 until her discharge.

14. Nemeth is male.

15. Elizabeth Rodriguez ("Rodriguez"), Assistant to the Dean, also supervised Matthies.

16. Defendant, through Nemeth, created and maintained a sexually-hostile work environment for Matthies during the period Nemeth supervised her. The sexual harassment was severe or pervasive and altered the terms and conditions of her employment, including, but not limited to: her performance, her emotional and mental state at work, and Defendant's policies, procedures, and terms concerning its employees, including Matthies, of not being harassed at work by management. The harassment included multiple verbal and written statements by Nemeth to Matthies on a near daily

basis, including, but not limited to, singing sexual and romantic songs to her; emailing songs to her that contained lyrics that were romantic and/or sexual in nature; referring to her as Britney Spears while she was wearing a dress; suggesting that she should dance and sing for him; repeatedly asking her to dance for him; staring at and ogling her; making multiple references to kissing; asking her to go on dates; stating that he reads Playboy because he is hip; calling her dear; giving her a note with hearts on it; sending pictures of dresses and bathing suits to her that he thought she should wear; commenting to her about "BBB" (Best Friend, Baby, and Boobs) and "Steely Dan" (sex toy); asking her if she wore tropical fragrances, like coconut oil; telling her that she was beautiful; referencing a condom; telling her to wear a fishnet outfit like Cher; commenting about heart-shaped beds; telling her that he could put his hands on her, like Reverend Ernest Angley, where she did not want to be touched (chest); telling her she would look good in a low-cut dress; and stating that she should dance on Dancing with the Stars so that he could watch her.  Nemeth walked into Matthies' office multiple times with his pants unzipped and his crotch wet.  He touched her hand on several occasions.  He placed his crotch near her head several times while she was seated.

17.    Matthies rebuffed and rejected Nemeth's unwanted and unwelcomed sexual advances by ignoring his sexual comments, responding coldly to him, changing the subject, and not engaging in his sexual banter, except with generic and non-sexual responses.

18.    Nemeth frequently displayed his angry temperament in the workplace.

19.    Matthies complained about Nemeth's sexual harassment to Rodriguez, a Faculty Senate leader, and several professors.

20.    Despite her statutorily-protected complaints, Defendant took no legitimate actions designed to remedy the hostile work environment.

21.    Nemeth routinely failed to communicate with Matthies about legitimate business-

-3-

related matters. He did not consistently provide necessary information to her to enable her to perform her job and complete her projects. He repeatedly told her that he would tell her about key information when he wanted her to know, which oftentimes did not happen in a timely manner, if at all. He often provided erroneous information to her that interfered with the performance of her job.

22. Matthies assisted Nemeth in the creation, development, and implementation of the CCA Student Awards Banquet in or about April 2022.

23. Nemeth stated to the attendees at the banquet on or about April 28, 2022, that he appreciated the primary contributions of Matthies that made the event a success.

24. The mother of Matthies' deceased husband and grandmother of Matthies' children died on or about May 2, 2022.

25. Matthies asked Nemeth to permit her to use bereavement leave.

26. Nemeth had previously become angry or cold toward Matthies when she mentioned other men, including her deceased husband.

27. On or about May 3, 2022, Nemeth denied Matthies' request for bereavement leave.

28. Matthies subsequently used vacation time as bereavement leave to attend the funeral and grieve.

29. Matthies returned to work on or about May 12, 2022.

30. Defendant fired Matthies on or about May 13, 2022.

31. Anne Gregory ("Gregory"), Dean of the College of Humanities, Education, and Social Sciences ("CHESS"), issued a termination letter to Matthies.

32. The termination letter provided, in relevant part: "Specifically, you have failed to meet the terms of the action plan shared with you on February 19, 2021."

33. Defendant, including Nemeth, presented no action plan to Matthies during the period Nemeth supervised her.

34. Defendant, including Nemeth, issued no discipline to Matthies, including a written warning or suspension, during the period Nemeth supervised her.

35. Defendant did not discipline Matthies for purportedly not completing assigned paperwork accurately, not submitting assignments in a timely manner, not attending professional development or trainings offered by the CHESS Dean's Office, or engaging in an adversarial communication style that was not oriented toward problem-solving.

36. According to Defendant, several issues relating to the planning and execution of the CCA Student Awards Banquet at the end of April 2022 were the final motivating factor leading to Matthies' discharge.

37. Defendant ordered police officers to be present to escort Matthies from the campus after the termination meeting with Gregory.

38. Defendant's police officers escorted Matthies from the campus after the termination meeting.

39. Matthies had no knowledge or awareness that her employment was in jeopardy before Defendant fired her.

40. On or about May 26, 2022, Matthies filed a grievance/complaint with Defendant, alleging, in part, that Nemeth had sexually harassed her. She sought to appeal her termination through the grievance/complaint.

41. Defendant rejected Matthies' grievance/complaint without conducting any investigation into grievance/complaint.

42. Defendant subsequently hired Braedon Hoffman ("Hoffman"), a male, to replace Matthies and/or to assume her duties and responsibilities.

43. Hoffman was less qualified and less experienced for the Administrative Assistant position as compared with Matthies when he replaced her and/or assumed her duties and responsibilities.

44. Defendant took adverse employment actions against Matthies because of her gender and/or her statutorily-protected conduct.

45. Defendant has accorded more favorable treatment to comparators outside of Matthies' protected classes.

46. Any reason proffered by Defendant for the adverse actions it took against Matthies is pretextual.

46. Matthies has suffered injury as a result of Defendant's unlawful actions, including, but not limited to, lost wages, lost benefits, inconvenience, humiliation, embarrassment, anger, disgust, frustration, and similar emotions as a result its unlawful acts.

## COUNT I

## SEX DISCRIMINATION – TITLE VII

47. Matthies hereby incorporates paragraphs 1-46 of her Complaint.

48. Defendant fired Matthies because of her sex.

49. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Matthies' rights as protected by Title VII.

## COUNT II

## SEX HARASSMENT – TITLE VII

50. Matthies hereby incorporates paragraphs 1-49 of her Complaint.

51. Defendant created and maintained a sexually-hostile work environment for Matthies.

52. Matthies opposed the sexual harassment, including, but not limited to, reporting the sexual harassment to Rodriguez, a Faculty Senate leader, and several professors.

53. Defendant took no action to address Matthies' complaints.

54. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Matthies rights as protected by Title VII.

## COUNT III

## RETALIATION – TITLE VII

55. Matthies hereby incorporates paragraphs 1-54 of her Complaint.

56. Matthies engaged in statutorily-protected conduct when she rebuffed Nemeth's unwelcomed sexual advances.

57. Matthies engaged in statutorily-protected conduct when she complained about sexual harassment to Rodriguez, a Faculty Senate leader, and several professors.

58. Defendant fired Matthies because of her statutorily-protected conduct.

59. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Matthies' rights as protected by Title VII.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Laura Matthies, by counsel, respectfully requests that this Court find for her and order that:

1. Defendant pay lost wages and benefits to Matthies;

  2. Defendant reinstate Matthies to the same position, with the requisite pay, seniority, and benefits, or pay front pay and benefits to her in lieu of reinstatement;

  3. Defendant pay compensatory damages to Matthies;

  4. Defendant pay pre- and post-judgment interest to Matthies;

  5. Defendant pay Matthies' attorneys' fees and costs incurred in litigating this action; and

  6. Defendant pay to Matthies any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

            Respectfully submitted,

            /s/ Bradley L. Wilson
            Bradley L. Wilson, Attorney No. 21154-49

            /s/ Shannon L. Melton
            Shannon L. Melton, Attorney No. 29380-49

            Attorneys for Plaintiff
            Laura Matthies

WILSON MELTON, LLC
5226 South East Street, Suite A-5
Indianapolis, Indiana 46227
Telephone: (317)802-7181
Email:  bwilson@wilsonmelton.com
     smelton@wilsonmelton.com

## **DEMAND FOR JURY TRIAL**

Plaintiff, Laura Matthies, by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

/s/ Bradley L. Wilson
Bradley L. Wilson, Attorney No. 21154-49

Attorneys for Plaintiff
Laura Matthies